**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD,** <br> **Plaintiff,** <br><br> **v.** <br><br> **CRESTRON ELECTRONICS, INC.,** <br> **Defendant.** | **Civil Action No. 3:26-cv-01831** <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD (collectively "Plaintiff" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of the claims of U.S. Patent No. 8,914,526 (the "'526 patent") and U.S. Patent No. 9,961,097 (the "'097 patent") (collectively, the "Patents-in-Suit") by Defendant Crestron Electronics, Inc. ("Crestron" or "Defendant") during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

**I. THE PARTIES**

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Crestron Electronics, Inc. is a corporation organized and existing under the laws of the State of New Jersey. Defendant maintains a regular and established place of business in the Northern District of Texas, including at least 7250 Dallas Parkway, Ste. 600, Plano, Texas 75024. On information and belief, this Plano location includes

Crestron office, sales, support, engineering, product, customer-facing, design, experience-center, training, smart-home, automation, cloud-services, control-system, lighting-control, shade-control, audio/video, security, HVAC, and/or commercial operations for Crestron products and services in Texas. On information and belief, Defendant sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Texas and this judicial district. Defendant can be served with process through its registered agent, Corporation Service Company, Princeton South Corporate Center, Suite 160, 100 Charles Ewing Boulevard, Ewing, New Jersey 08628, or Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701, at Defendant's place of business in this District, or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, and/or supports infringing products, applications, cloud services, account systems, smart-home automation systems, control systems, touch screens, mobile applications, Crestron Home systems, XiO Cloud systems, remote-monitoring systems, lighting-control systems, shade-control systems, thermostat-control systems, audio/video-control systems, security-camera systems, access-control systems, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

## II. JURISDICTION AND VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on

Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing, and supporting of the Accused Instrumentalities in the United States during the enforceable terms of the Patents-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the Northern District of Texas has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the State of Texas.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

8. Defendant has committed acts of infringement within this District and the State of Texas by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Crestron Home systems, Crestron Home OS, Crestron Home mobile applications, Crestron Home App services, XiO Cloud services, XiO Cloud account and registration services, Crestron remote-access servers and web servers, MC4-R and other Crestron 4-Series control systems, Crestron touch screens including TST-1080 and 80 Series touch screens, user interfaces, smart lighting devices, shades, thermostats, HVAC controls, home-access devices, audio/video devices, cameras, door locks, sensors, security systems, in-wall and wireless control interfaces, infiNET EX wireless gateways, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and

within this District, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within Texas and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and Texas.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business in Plano, Texas, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is incorporated under the laws of New Jersey and therefore does not reside in Texas for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, including at least 7250 Dallas Parkway, Ste. 600, Plano, Texas 75024. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

## III. THE PATENTS-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiff does not seek injunctive relief or damages for any alleged

infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. On May 1, 2018, the '097 patent, entitled "SYSTEM FOR REMOTE ACCESS OF A USER PREMISES," was duly and legally issued by the United States Patent and Trademark Office. The face of the '097 patent identifies U.S. Patent Application No. 14/536,784, filed November 10, 2014, as a continuation of U.S. Patent Application No. 09/868,417, filed as PCT/AU99/01128 on December 17, 1999, and further states that the '097 patent is subject to a terminal disclaimer. Plaintiff asserts the '097 patent only for alleged infringement during its enforceable term and within the applicable damages period, and does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '097 patent. A true and correct copy of the '097 patent is attached hereto as Exhibit C.

15. Portus owns the entire right, title, and interest in and to the Patents-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable terms of the Patents-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patents-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patents-in-Suit during their enforceable terms.

16. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282 and claim patent-eligible subject matter.

**IV. TECHNOLOGY OF THE PATENTS-IN-SUIT**

17. The Patents-in-Suit are directed to specific technological solutions for local and remote monitoring and control of user-premises systems through standard browser-access and external network architectures. The patents explain that users of advanced automation, security,

smart-home, lighting-control, shade-control, thermostat-control, HVAC, audio/video, access-control, and home-control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56; Ex. C, 1:16-2:42.

18. The specifications identify concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8; Ex. C, 2:40-64. The patents further identify surveillance, alarm-data, access-control, premises-control, and remote interrogation problems, including that data could remain unprotected at the premises and that conventional systems did not provide practical remote monitoring through a standard, location-independent interface. Ex. A, 2:9-31; Ex. C, 2:15-42.

19. The claimed inventions are not the abstract idea of remote monitoring, smart-home control, lighting control, shade control, thermostat control, HVAC control, audio/video control, home automation, security control, access control, or presenting information. They recite particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. *See, e.g.*, Ex. A, claim 57; Ex. C, claim 1.

20. The specifications describe concrete architectures that improve computer-network

functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4; Ex. C, Abstract; 2:44-3:8. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. *Id.*

21. The claimed arrangements provide technical benefits and non-conventional features, including separating the external network and communications server from user-premises networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical connection to the premises network. Ex. A, claim 57; Ex. C, claim 1.

22. The patents further disclose concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6; Ex. C, Figs. 1-6.

23. The Patents-in-Suit therefore claim specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to apply a generic business practice on a computer. The claims are directed to particular network

7

architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

24. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Crestron Home systems, Crestron Home OS, Crestron Home mobile applications, Crestron Home App services, XiO Cloud services, XiO Cloud account and registration services, Crestron remote-access servers and web servers, MC4-R and other Crestron 4-Series control systems, Crestron control processors, Crestron touch screens including TST-1080 and 80 Series touch screens, user interfaces, smart lighting devices, shades, thermostats, HVAC controls, home-access devices, audio/video devices, cameras, door locks, sensors, security systems, infiNET EX wireless gateways, network I/O extenders, smart-home devices configured to operate with Crestron remote monitoring and control systems, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable terms of the Patents-in-Suit. Plaintiff's infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or supporting of those Accused Instrumentalities during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

25. The Accused Instrumentalities include at least one accused instrumentality group: Crestron Home, Crestron Home App, XiO Cloud, and cloud remote-access systems, including Crestron Home systems, Crestron Home OS, Crestron Home App services, XiO Cloud services, XiO account and registration services, MC4-R and other 4-Series control systems, TST-1080 and 80 Series touch screens, Crestron user interfaces, lighting, shades, thermostats, HVAC, home-

access, audio/video, cameras, sensors, door-lock, security, and other connected smart-home devices. Exhibit B supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 57 of the '526 patent. Exhibit D supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 1 of the '097 patent.

**A. Crestron Home, XiO Cloud, and Cloud Remote-Access Systems - '526 Patent**

26. Crestron provides and supports Crestron Home systems, Crestron Home OS, Crestron Home mobile applications, XiO Cloud services, MC4-R and other Crestron control systems, Crestron touch screens, and related Crestron cloud remote-access systems deployed at user premises and connected to Crestron Home App and XiO Cloud services for remote monitoring and/or control. Exhibit B identifies the accused system as including Crestron Home systems, touch screens, control systems such as the MC4-R, and smart devices such as smart lights, thermostats, shades, cameras, door locks, sensors, audio/video devices, home-access devices, and other networked devices deployed within a home or user premises and connected to Crestron Home App services for remote access and remote monitoring/control of user-premises devices. Ex. B at 1-4.

27. For purposes of Plaintiff's infringement allegations under the '526 patent, Exhibit B identifies the first network as the XiO Cloud services network and/or Crestron cloud services network; the first arrangement of processing circuitry as XiO Cloud server and Crestron backend processing circuitry programmed to manage accounts, device registration, device-state synchronization, remote provisioning, monitoring, management, and remote access; the user access browser device as smartphones, tablets, computers, and/or Crestron touch screens running or accessing the Crestron Home App, Crestron Home interfaces, XiO Cloud interfaces, or related access-browser functionality; and the second arrangements of processing circuitry as MC4-R and

other Crestron control systems, touch screens, gateways, and related local-premises devices deployed in respective user premises networks. Ex. B at 4-12.

28. The Crestron Home, XiO Cloud, and cloud remote-access systems practice the preamble and limitations [57A] and [57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Ex. B at 1-12.

29. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitation [57C] because XiO Cloud services, Crestron Home App backend services, and related Crestron cloud services are adapted by programming to initiate or cause the establishment of network connections with selected MC4-R control systems, touch screens, smart-home devices, lighting devices, shade devices, thermostats, cameras, sensors, home-access devices, audio/video devices, and other premises devices when an authorized user logs in, registers a system or device, selects a home, room, device, or service, sends a command, requests status information, or uses Crestron Home App or XiO Cloud interfaces. Ex. B at 12-16.

30. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitation [57D] because the Crestron Home App, Crestron touch-screen interfaces, XiO Cloud web/portal interfaces, and related remote-access functionality operate as access-browser functionality for locating and examining information on the Crestron first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, authenticated web services, cloud APIs, and user selections that cause the client to access Crestron cloud resources and corresponding smart-home information. Ex. B at 4-8, 16-18.

31. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitations [57E] and [57F] because the Crestron first circuitry arrangement receives authentication and/or authorization data from the user device, including account credentials, XiO Cloud account data, Crestron Home App login information, device-registration data, claimed device information, system identifiers, authorization tokens, session credentials, subscription or service information, and/or user permissions, and uses that data to determine which premises network, control system, touch screen, smart-home system, room, or local networked component the user is authorized to access. Ex. B at 12-23.

32. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitations [57G] and [57H] because Crestron's external first network is configured to create a communications session between the user's access-browser device and a selected second arrangement located at the user premises, including an MC4-R or other Crestron control system or touch screen, and to obtain information contained within the selected user premises network from that second arrangement. During such sessions, the accused systems obtain device state, room status, lighting status, shade status, thermostat status, camera/security information, access-control information, audio/video information, and other selected information from the user-premises network. Ex. B at 16-24.

33. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitations [57I] and [57J] because Crestron's first circuitry arrangement serves the selected information to the user access browser device and controls access based on the authentication and authorization data. Crestron cloud services, web servers, app servers, XiO Cloud services, and Crestron Home interfaces serve device information, control information, status information, notifications, dashboards, home/room/device views, and other selected premises information to

authorized users through the Crestron Home App, touch-screen interfaces, and web/portal interfaces, thereby providing seamless access to information from the selected user premises network. Ex. B at 16-25.

34. To the extent Crestron contends that the user, installer, dealer, mobile device, touch screen, local router, control system, MC4-R, smart-home device, or premises component performs a step that Crestron itself does not perform, Crestron still controls and directs the accused remote-access sequence. Crestron designs, programs, configures, operates, provides, maintains, and supports the Crestron Home App, XiO Cloud services, account-registration services, device-registration services, remote-access services, firmware, control-system software, cloud endpoints, touch-screen interfaces, and prescribed setup/use flows that condition participation in the accused system on performance of the claimed steps and establish the manner or timing of that performance. Users and installers do not independently choose how to create accounts, register systems, claim devices, authenticate to Crestron services, connect to Crestron cloud infrastructure, initiate cloud sessions, or retrieve/control premises-device information; they follow Crestron's required app, portal, controller, touch-screen, cloud, licensing, registration, and configuration workflows. Crestron therefore performs the accused system claims directly and, at minimum, directs or controls any third-party performance sufficient to avoid any divided-infringement defense.

**B. Crestron Home, XiO Cloud, and Cloud Remote-Access Systems - '097 Patent**

35. Crestron's accused Crestron Home, XiO Cloud, and cloud remote-access systems also infringe at least claim 1 of the '097 patent. Exhibit D identifies the accused system as including Crestron Home systems, Crestron Home OS, touch screens, MC4-R and other control systems, smart devices, and Crestron Home App services for remote access and remote

monitoring/control of user-premises networks located in respective user premises. Ex. D at 1-4.

36. For purposes of Plaintiff's infringement allegations under the '097 patent, Exhibit D identifies the first hardware processing circuitry running an access browser module as a user smartphone, tablet, computer, and/or Crestron touch screen running or accessing the Crestron Home App, Crestron Home interfaces, XiO Cloud web/portal interfaces, or related access-browser functionality; the second hardware processing circuitry located in a first network as XiO Cloud server and Crestron cloud services processing circuitry; and the connection gateway as the MC4-R or other Crestron control system located in and part of a local network of the user premises. Ex. D at 4-10.

37. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitation [1A] because a user's phone, tablet, computer, or touch-screen control panel runs an access browser module and because XiO Cloud services and Crestron Home cloud services are located in a first network external to the user premises. The accused systems also practice limitation [1B] because an MC4-R or other Crestron control system acts as a connection gateway located in and part of the local network of the user premises, connects with the XiO Cloud server through a network connection, and connects smart devices in the local premises network. Ex. D at 4-8.

38. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitations [1C], [1D], and [1E] because Crestron cloud services are external to the user premises, accessible via the access browser module, and configured to communicate on demand with the connection gateway; the connection gateway is integrated with or communicatively coupled to networked components of the local network, including lighting, shades, thermostats, HVAC devices, home-access devices, audio/video devices, cameras, sensors, security systems, door locks, and other smart-home components; and the system is configured so that URL/URI-

directed access, web/portal access, cloud API calls, or app selections access a predetermined address on the first network and cause the claimed communication sequence. Ex. D at 8-14.

39. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitations [1F], [1G], [1H], and [1I] because the first network is configured to receive authentication data from the user device, including Crestron account credentials, XiO Cloud account credentials, device-registration data, system-claim information, identifiers, tokens, and user permissions; the user premises is one of a plurality of user premises; the connection gateway is one of a plurality of gateways associated with respective local networks; the Crestron cloud determines which local network the authentication data indicates authority to access; and the Crestron cloud establishes a new communication session between the user access device and the connection gateway for the respective authorized local network. Ex. D at 14-24.

40. The Crestron Home, XiO Cloud, and cloud remote-access systems practice limitations [1J] and [1K] because Crestron cloud services provide previously stored selected information regarding local networked components to the access browser module after authentication, including room status, device status, lighting status, shade status, thermostat status, home-access status, camera/security information, audio/video information, notifications, logs, dashboards, control states, and configuration information. The same authority to access the local networked components by transmitting authentication data also provides authority to access and review the previously stored selected information. Ex. D at 24-26.

41. To the extent Crestron contends that the user, installer, dealer, mobile device, touch screen, local router, control system, MC4-R, smart-home device, or premises component performs a step that Crestron itself does not perform, Crestron still controls and directs the accused remote-access sequence. Crestron provides the Crestron Home App, XiO Cloud

services, account-registration services, device-registration services, remote-access services, controller software, firmware, cloud endpoints, web/portal interfaces, touch-screen interfaces, and required setup, pairing, registration, licensing, and authentication workflows that determine how the accused systems operate. Users and installers receive the benefit of remote monitoring and control only by using Crestron's prescribed architecture and performing steps in the manner Crestron requires. Accordingly, any acts performed by users, installers, dealers, control systems, touch screens, or premises devices are attributable to Crestron for purposes of direct infringement, and Crestron cannot avoid infringement by characterizing the accused system as distributed across cloud, app, controller, and premises components.

## VI. COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,914,526

42. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

43. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 57 of the '526 patent by making, using, selling, offering to sell, importing, providing, operating, testing, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '526 patent and within the applicable damages period.

44. Defendant's infringement of the '526 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '526 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

45. Plaintiff does not seek injunctive relief or damages for infringement occurring after expiration of the '526 patent.

**VII. COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,961,097**

46. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

47. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '097 patent by making, using, selling, offering to sell, importing, providing, operating, testing, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '097 patent and within the applicable damages period.

48. Defendant's infringement of the '097 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '097 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

49. Plaintiff does not seek injunctive relief or damages for infringement occurring after expiration of the '097 patent.

**VIII. CONDITIONS PRECEDENT**

50. Plaintiff has never sold a product. Upon information and belief, no Plaintiff predecessor-in-interest has ever sold a product. Neither Plaintiff nor any licensee made or sold a patented article. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

51. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article,

for or under Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

52. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to show that the alleged unmarked product does not practice the Patents-in-Suit and/or that Plaintiff has substantially complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiff.

53. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

54. For each previous settlement license, Plaintiff understood that (1) the settlement

license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for each prior settlement license.

55. Each settlement license that was entered into between a defendant entity and Plaintiff was negotiated in the face of continued litigation and, while Plaintiff believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

56. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to make an effort to require a prior settling defendant to mark products Plaintiff had accused of infringement. To the extent necessary, Plaintiff will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patents-in-Suit.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

a. Enter judgment that Defendant has infringed one or more claims of the Patents-in-Suit during the enforceable terms of the Patents-in-Suit;

b. Award Plaintiff damages adequate to compensate for Defendant's infringement during

18

the enforceable terms of the Patents-in-Suit and within the applicable damages period, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. Award Plaintiff supplemental damages for any continuing damages period occurring before expiration of the asserted patent rights and before final judgment, to the extent permitted by law;

d. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, expenses, and costs to the extent permitted by law;

e. Award Plaintiff such other and further relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 3, 2026                      Respectfully submitted,

**Ramey LLP**

By: */s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
wramey@rameyfirm.com

***Attorneys for Portus Singapore PTE Ltd. & Portus PTY Ltd.***

19